Thank you, Your Honor. May it please the Court. I'm Scott Stewart on behalf of the United States. I'm a Judge Owens. I'd like to save four minutes for rebuttal. You got it. Thank you. In this case, the District Court issued a preliminary injunction barring the government from applying a critical asylum rule to tens of thousands of aliens. That rule, by its terms, applies to an alien who enters, attempts to enter, or arrives in the United States on or after July 16, 2019. The District Court held, however, that the rule, by its terms, does not apply to a class of aliens who will enter the United States after July 16, 2019. That was the only merits basis the District Court gave for the preliminary injunction, and it was clearly wrong. The District Court made a number of other errors as well. This Court should vacate the preliminary injunction. Hey, Counsel, before you get rolling too far, there were some potentially significant developments since the briefing this case closed. We have the East Bay decision, which we asked the parties to be ready to discuss, and we also have an opinion from this Court that Judge Berzon wrote about the motion to stay. And so just in your presentation today, I'm sure my colleagues are gonna have lots of questions. I know I might have lots of questions, but don't please do spend some time to talk about the impact of East Bay, what we need to do in light of that case, if anything, and then what do we do with Judge Berzon's opinion, which analyzes, I understand, this exact question. Yes, Your Honor, I think I can answer both those questions right off the bat. With respect to East Bay, Your Honor, there are a number of East Bays. I may be mentioning another one in a moment with respect to Judge Berzon's opinion, Your Honor. But with respect to the East Bay decision, as well as the care decision out of the D.C. District Court, Your Honor, those cases don't affect this appeal at this time. Those cases involved the legal validity of the transit rule itself. In issuing the preliminary injunction itself, the District Court here did not rule on the legality of the transit rule, and its ruling did not turn on that issue. The District Court, I will also add, issued its injunction after another District Court had deemed the transit rule invalid, Your Honor. What I would say... If the transit rule were upheld, and I guess we don't know what's going to happen with that, would you agree that that would moot out this current injunction? If you're...are you saying if the injunction of the transit rule, or the vacator of the transit rule, were upheld, Your Honor? Well, okay, make sure I'm getting it right. The transit rule is...that's not what the plaintiffs have actually challenged in their underlying litigation here, right? Correct, Your Honor. So, we've got the third country transit rule. We have...well, we have a stay of the injunction by the United States Supreme Court. Correct, Your Honor. Can you tell...first of all, let me back up. The D.D.C., what is the current status there? Because he vacated, he issued a nationwide injunction. What did he do? Judge Kelly vacated the interim final rule version of the transit rule, Your Honor, on procedural grounds. Lack of notice and comment, comment will remain. Is the government's position that that vacation, the vacature there, applies nationwide because it comes out of the D.C. Circuit, or because it comes out of the district court in D.C.? Or would it be limited to D.C.? I think the district judge there...I'm not sure of the answer to that, Your Honor, but I think...I'm not sure the government has taken a position on that, Your Honor. The decision was issued just last week. The government is evaluating its options there. I think... How correct is it that the government has stopped enforcing the rule, though, because of the D.C. decision? That's my understanding, Your Honor, is that the rule is...we've treated the rule as vacated and are acting accordingly. I want to just be careful to preserve the options that it considers next steps in those cases. But currently the position is the government is not enforcing the rule anywhere in the United States because of the D.D.C. vacatory. But that doesn't root it out because...but let's say the Supreme Court didn't step in, in the Judge Fletcher opinion that was just issued, and the stay is lifted, and apparently at that point there's a nationwide injunction. Would that root out this injunction because the underlying rule would then be operative...or be vacated nationwide or not? I'm not sure of the answer to this, Your Honor. The answer that I can give you as I stand here today is that those decisions, East Bay and CARE, don't affect this appeal at this time for a number of reasons. One is that the government still can appeal in the CARE case. The preliminary injunction in the East Bay case is of course still stayed. There's an option of a final rule being issued that could address a number of issues raised in each opinion. So I think at this point, Your Honor, what I'm saying is that mootness is not...this case is not moot now. You're saying we should proceed and address this question expeditiously, consistent with what we would do on an expedited basis, and not give any consideration to those other cases. I think that's correct, Your Honor, with the following asterisk, is that the government can keep this court apprised as to developments that could bear on mootness or on this court's further consideration and review of this preliminary injunction. But I think Your Honor captures it. Well certainly, and to Judge Friedland's question, I think we would very much like to be apprised if the government changes its position on whether it's going to enforce, or is taking the position that it can enforce, the third country transit rule in any part of the country, specifically in the Ninth Circuit. Very good, Your Honor. Understood. I understand why this case is not technically in moot, but I don't really understand why it would be a good use of this case right now when there are two other opinions that are broader than this one that would prevent the kind of activity these plaintiffs are trying to challenge, because of a broader bar than what they're even seeking. So why would we write a whole opinion on this complicated issue when we're kind of being superseded by these other cases? Your Honor, again, the two points I would make is that those cases are still ongoing. We of course have the Supreme Court, in one case, the Supreme Court necessarily evaluated certain relevant considerations that at least invite the opportunity for a petition for certiorari. And I would also add though, Your Honor, is that if further developments lead to the rejection of either of those rulings, or the vitiation of either of those rulings, this court would still have a situation it has now where you have a preliminary injunction that does not turn on the legal validity of the transit rule. So I think Judge Nelson puts it well when he said, you know, the court should rule on this live issue, and decide the case before it. And I think there are a number of cases... But nothing is happening because of this case right now, right? I guess I just don't understand. If you can't enforce the rule, then you can't enforce the rule against this class or anyone else. So why wouldn't it make sense for us to just overturn? Then we have a different decision, and we're back where we started, and then we would need to decide this case. But why wouldn't we wait and see if that happens? I mean, it's hard to know when those developments could be complete, Your Honor. And again, I mean, if there is a development that puts the transit rule in effect, this becomes even a more difficult case. Let me ask the question maybe this way. I'm not convinced that the DDC opinion actually vacates the rule nationwide. Now, the government seems to be... I don't know if they're taking that position as a prudential matter or as a legal matter, but it seems to me... I mean, that's the question our court needs to grapple with, is if we believe that that has stayed the whole rule, then maybe there isn't as much need to proceed expeditiously. I mean, the reason to proceed expeditiously is because the government wants to enforce this. And what I'm hearing is the government saying, at this time, we don't intend to do so. Now, I don't know if that's a legal requirement by the government, but if that's the position the government's taking, it does undermine our need to move forward quickly. Your Honor, we're not saying that we don't want to enforce this rule. What we are saying is that we need to be careful in the face of a court order saying that the rule is vacated, and that we do need to evaluate our options expeditiously. We, the government, have obviously sought to vindicate our ability to enforce the rule to the top of the judicial chain, and I think we've explored that Can I ask a question about that? The government did not, and if you don't have an answer for this, or can't give me one, I understand it, but I did find it interesting that the government did not seek a stay from the Supreme Court, from Judge Berzon's opinion. So did not try to seek a stay of the injunction in this case. Is there anything we can draw, or should we draw from that, or is that just a legal decision that the government made that has no impact on how we proceed? I mean, I don't think it affects, I can't think of a reason why it would affect how this court proceeds, Your Honor. As Your Honor would know, or can imagine, there are a number of factors that go into one of those kinds of points, so, and we can't give me anything, you can't give me anything substantive behind the decision not to proceed. I mean, is it just because there's no need? Was the government enforcing this before? I mean, one of the theories is that there's really nobody showing up at the border right now, so why bother the United States Supreme Court to stay an injunction that, you know, really doesn't matter right now. I don't know if you can comment on that or not. I'm reluctant as I stand here to kind of open it further, Your Honor. No, I don't want to put you in a tough spot. Can I ask you about 1252 F1? The government's raised a jurisdictional question here. I didn't see anybody in either the majority or the dissent in the Judge Berzon opinion, if we're going to shorthand it, address that. Is that something that we have to address because it's a jurisdictional question? I, Your Honor, I mean, I think the short version here is that I don't think the court necessarily, it would have to address it to uphold the injunction. There are a lot of arguments that the plaintiffs, that the plaintiffs here don't need to decide jurisdiction out of the gate. And if we, I mean, I have some concerns about the 1252 argument by the government, but right now I'm just trying to fundamentally understand, do we need to address it? I mean, there were so many issues addressed in the motions panel, and I found it somewhat surprising that a jurisdictional question apparently escaped any ink. So do we have to address that? Or could we, I mean, is there a reason, am I missing something? And there's a reason we don't have to address that jurisdictional question in this case. I think that the court, I believe, and I'll submit something if I'm missing something here, Your Honor, but I think the court can just rule on the grounds that we raise even before that threshold issue. I mean, it's an unusual jurisdictional situation where it's strict jurisdiction over a remedy. So it's kind of not, it's not really, it doesn't go to kind of the threshold justiciability point in the same way as kind of normal justiciability points go. It's more just barring off a remedy. But if the court just rules that the government says right on the merits. So your position is that 1252 does not, I see, so it's really not a jurisdiction, you're not saying we don't have jurisdiction over this. We don't have jurisdiction to review the injunction, or the district court didn't have jurisdiction to issue the injunction. You're just saying it was statutorily barred from doing so. I think it lacked authority to issue a class-wide injunction here, Your Honor. Yeah. I want to be careful about authority, jurisdiction, but I think it lacked authority to issue that. Well, it is an the All Writs Act, I mean, goes to the authority, but isn't necessarily a jurisdictional point. Can I ask another question on Pacific Radiation Oncology? That seems to be the case that the government relies on most heavily to suggest that an injunction is not available under Rule 65 here. But it does seem like the facts here have a little bit more of a nexus. Even though the rule that was enjoined, it's unusual, obviously, the rule that was enjoined wasn't even challenged in the plaintiff's complaint. It does seem like there's more of a nexus here than there was in Pacific Radiation Oncology. If we went your way on this, where's the limit? Do we need a hardline rule that says, if you don't challenge the rule in the complaint, you just can't get Rule 65 released? Is that the government's position, or is there a different limiting factor? I think what this court can simply hold here, Your Honor, is that you cannot issue a preliminary injunction without ruling on, under the Rule 65 factors, without ruling on the likely legality of a pleaded claim or something actually pleaded in the complaint. And I think there's an example that this court endorsed in Pacific Radiation, Your Honor, where the court endorsed an Eighth Circuit decision, DeVos v. Harrington, where the court talked about how, look, in an initially filed prisoner suit in that case, the prisoner brought a Section 1983 action against prison officials for violating his Eighth Amendment rights. Later, he tried to seek injunctive relief based on retaliation for that claim. So in a sense, those are kind of related, but this court emphasized that you need exactitude. You need to go after, in your injunction, something at issue in your underlying complaint. And here, I think the big problem is the district court in this case, Your Honor, issued an injunction in a metering challenge without ruling on the likely legality of metering, and it enjoined a rule that's not even in the Eighth Circuit complaint or in the case. I mean, that's a double-barreled problem, and I think, Judge Nelson, that you can avoid having to do difficult line drawing in future cases by just showing, you know, whatever else you can do under Pacific Radiation, surely you cannot grant a preliminary injunction with those two features. Rule not even in the case, not even ruling on the underlying claims in the case. I know you've asked for rebuttal time, but I did have a couple more questions, and I'm sure my colleagues do as well have other questions. But you did not, the government did not make an argument that an injunction under the All Writs Act is not necessary or appropriate because there is another available remedy under Rule 65. Is that argument been waived? You know, this goes to the discussion we were having earlier about the difference between jurisdiction and authority. Obviously, we've said jurisdictional arguments are not waived. Would you take the same position under the All Writs Act that that argument is not waived, or do you agree that that argument has been waived by the government? Your Honor, this is the argument that an injunction here is inconsistent with the All Writs Act on the merits? Which, by the way, I think it's a very compelling argument. I think, I mean, but I have some concerns about whether it's been waived. I mean, I don't think we've emphasized that there's just no legal basis for this injunction, Your Honor. You know, again, we didn't have to raise the All Writs Act point in the opening because the district court relied that on us as an alternative basis for jurisdiction. No, but what if we don't read it that way? I mean, I read the district court as relying on the All Writs Act as an alternative basis on the merits, and specifically saying that it is not a ground of jurisdiction, that it can't be. It's only to protect other jurisdictions. I don't, I especially disagree with that, Judge Friedland. The discussion appears expressly in the section that's captioned jurisdiction. That's at pages 19 to 21. It comes just after the Pacific Radiation type point that I was just discussing with Judge Nelson. But maybe it's in the section on jurisdiction because the judge says this isn't jurisdiction. I mean, this is a different thing. Who knows why it's under that heading, but what the judge actually says is, this isn't jurisdiction, this is about the merits. And then the government says nothing about that in the opening brief. So I don't really understand how this isn't forfeited. That's not correct, Your Honor, because we don't have to challenge a basis for the district court's ruling that the district court did not give. It gave that as a jurisdictional basis. It wouldn't have needed under, if the injunction could have been issued under the All Writs Act, then there wouldn't be a basis or there'd be a problem with going through the Rule 65 factors, because those provide, as I think Judge Nelson was explaining, an adequate remedy available. It was confusing to me why the district court wrote it that way. Because if the district court had authority under Rule 65, then I don't even understand why the district court was addressing the All Writs Act. Right, Your Honor. It was, again, I think part of the concern here, the district court was facing a situation where the district judge was saying that a transit claim would have run into the teeth of the Supreme Court's stay. Ruling on metering on a class-wide injunctive basis would be, at the very least, extraordinarily hard. The government would maintain not an available option for all the reasons we've given. So the district court instead used this other basis, and it was very difficult. The district court had jurisdictional problems given what was pleaded in the complaint, just given the fact of not ruling on metering. Dealing with all those problems, I think the district court put in the All Writs Act point as a backstop to try to we disagree with that, but there are many other problems here. We've identified the Pacific Radiation Act, made clear that the All Writs Act is not an available point here. What would it mean that the district court used it as an alternative basis for jurisdiction, though? Because I don't think there's any question that there's federal jurisdiction over the question of whether the metering policy is okay or not, right? There's federal jurisdiction in this case. I don't even understand the theory of what you think the district court was doing. I think what the district court was doing, Your Honor, was trying to explain... Again, this All Writs Act discussion just came just after the argument or the point on Pacific Radiation about whether the claims here are of a different character. And I think the district court put this in as a backstop, realizing that that was an iffy point the district court just made, to say, look, here is an alternative statutory basis for me to decide this preliminary injunction. But it's a jurisdictional issue, I think. And the court explicitly says that. It's not a basis of jurisdiction. It can't be a basis of jurisdiction. Your Honor, respectfully, I don't agree with that. The All Writs Act gives courts the ability to issue orders that aid in a merits ruling. A classic United States versus New York telephone company from the Supreme Court is a good example, Your Honor. This is an offside. I apologize, Judge Owens. I see I'm well over time. No, that's okay. I'm going to go ahead and give you some time in rebuttal. Go ahead and finish up your thought now. Thank you, Your Honor. Where the court, before issuing an All Writs Act injunctive remedy, had already concluded that there was an entitlement on the merits to the warranted issue in the case. After concluding on that merits basis, the court then invoked the All Writs Act to get a third party to help out and perform that legal entitlement here. Here, I think the district recognized, that's why the district court reached the Rule 65 factors, that it needed to also similarly hit those factors. It erred on those, and that's, I think, where the district court surely went wrong in a reversible way. Okay, counsel. We'll go ahead and give you, I'm going to go ahead and give you five minutes for rebuttal, because this case has a lot of questions, and so you've still got five minutes after here from your other counsel. Counsel and the court, I'm going to take one brief second to see if I can hook up headphones to this. You've noticed, there are some sirens in the chambers are in downtown San Diego, right next to a fire department. So, if we can just take one second here, I'm going to just, I may disappear, but I'll be right back. All right. While we're breaking, can everybody see me okay? The power, a few minutes ago. Oh boy. I can open the windows, if that would be helpful. We can see you. Great. Okay, one second here. If I can get this to work. Just one more second, guys. I apologize for the delay here. Sounds like I'm not having the worst day when it comes to technology. I went to the office to avoid internet problems. I don't know what you mean. Okay, let's see here. Okay, can you all hear me okay? Yes. Looks like Judge Friedland's moving, Judge Nelson's moving. Mr. Lev is there, Ms. Casler's there, Mr. Stewart's there. Okay, great. Ms. Manning, if we could put that clock to 10 minutes per side. Okay, so I think, Mr. Lev, before we begin, I think Ms. Manning indicated to you that you have a hard 10 minutes. If for some reason you finish before 10, you can cede your time to Ms. Casler, but you can't steal her time, if that makes sense. Understood, your honor. I'll do my best to stick to the 10. All right, you may proceed, counsel. Thank you, good afternoon, and may it please the court, Ori Lev on behalf of the plaintiffs. With the court's indulgence, I will be addressing the impact of the East Bay and CARE decisions on this appeal, the propriety of the injunction in this case under the All Writs Act, issues relating to irreparable harm and the equities, and if the court has questions about class certification. And Ms. Casler will be addressing questions regarding the statutory interpretation of the INA in section 1252F. The question before the court is whether the district court abused its discretion by issuing a prohibitory preliminary injunction to remedy what it found to be a quintessentially inequitable situation, one that would result in plaintiff class members being sent back to the very countries from which they fled in fear as a result of what the court found to be the government's duplicitous bait and switch. I'll start with East Bay and CARE, and we don't agree with the government on many things, but we do agree with the government that those decisions don't directly impact this appeal. And that's because neither of them is a final definitive injunction with respect to the rule. Second, the scope of the vacature in the District of Columbia, even if it applies nationwide, is not entirely clear in terms of how it may apply to class members who are in different stages of their asylum proceedings. And third, because our class members should be entitled to seek any aid that might be necessary to enforce the injunction in this case from Judge Bichon. And we've been in discussions with the government about issues regarding how the injunction is being applied. And of course, they couldn't do that in the District Court of D.C. Hey, Counsel, I think we have, and you submitted a 28-J as well, so I think we have your position on that. Can I turn you to Rule 65? Oh, I'm sorry. Could we stay on that for a second, though? Because I just am really confused about this, because it seems like you're arguing against your interest in some way that I don't understand. It seems like right now the rule is, I thought, not able to be in effect, because I thought, at least our court's understanding of a vacature under the APA is that the rule is gone. Nationwide, it's entirely gone. And if that's true, aren't you happy with the status quo? Well, Your Honor, we would be happy if the government were not going to appeal, if the government conceded that it was not going to be applying the rule to any of our class members. And I certainly agree with you that, from a judicial resources perspective, the court could leave this preliminary injunction in place and not wait and see what happens before you issue a ruling. We're not looking for an urgent affirmance. And do you have any reason why you would care if we did that? I mean, it seems like the efficient thing to do is wait and see. Is there any problem with that? Not at all, Your Honor. We would have a problem with the court vacating the injunction because of these other decisions, because then further action might bring the rule back to life. And our class members would be hurt. It sounds like we all agree there's no mootness. So I don't think we have to get rid of the case. But it also seems like there's just no, it would be almost an advisory opinion right now to issue an opinion, I think, because there's nothing to decide right now. We agree there's absolutely no urgency now, Your Honor. Then why are you, then why did you submit your 28-J telling us to decide it urgently? I'm not sure if we said that and if we did. And I apologize. We may have misspoken. We didn't want the court to think that the appeal was moot because of those decisions and therefore that the preliminary injunction should be vacated. That we would disagree with vehemently. I mean, but to kind of cut to Judge Friedland's question, Mr. Webb, it seems that we have to write an opinion in this case saying something. And at this time, let's say we said we're going to write this opinion tomorrow. I don't know what it would say, because the rule that you guys are trying to say doesn't apply to your clients, maybe doesn't exist. So that's why I think Judge Friedland is saying this is a, under the current state of affairs, this is a borderline advisory opinion. Because we're writing about something why it may or may not apply to your clients that maybe doesn't exist anymore. But it's borderline only because of the DDC opinion, right? Because the Supreme Court has stayed the injunction, so it would be operative. And that's what I'm confused at, is if the Supreme Court has stayed an injunction in the Ninth Circuit, right? It stayed injunction of the underlying rule that's being challenged here. Am I correct about that? Correct. Yeah, so why wouldn't that stay apply? I mean, does the Supreme Court have to issue a separate stay as to the DDC, which enjoined or vacated the same rule? Well, Your Honor, yes. I mean, the Supreme Court stay applies to the injunction that was before it, that was issued in the East Bay case. And now a separate court ruling on, with separate parties before it ruling on different grounds, has vacated the rule under the APA. And certainly if the government chooses to appeal, and it could seek some sort of state in the Supreme Court. Well, right now the government seems to be taking a prudential position that it doesn't want to enforce it. But I don't know that that's bad. I mean, someone, I don't, your position is they couldn't even if they wanted to. Your position is that the DDC decision vacated the rule nationwide. Agreed, Your Honor. And again, we have no urgency in seeking an opinion from this court. We just don't want this court to vacate the preliminary injunction on mootness grounds, because that would place our class members at the risk of harm. Should the care vacature, for example, be stayed or reversed, we would have to run back to court. More time would allow more class members would be subjected to the rule improperly in the interim. I know, but what you were starting to say about negotiations with the district court or something, whatever that's about isn't dependent on whether we rush an opinion or not, right? Correct, Your Honor. That only, as long as the injunction is in place, we're happy and we are not in any urgency for action from this court. I apologize, I think Judge Nelson was going on. No, look, these are all important questions, so I think it's good to walk through them. The Rule 65, this is my question on Pacific Radiation. In Pacific Radiation, we said the relationship between the preliminary injunction and the underlying complaint must be sufficient, well, I added that, is sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally. And that gives me pause as to why Rule 65 is appropriate here, because you're seeking an injunction of a rule that your clients didn't challenge in the complaint. So I don't understand how this is valid  A couple of points, Your Honor. First, we view the district court's order as an order under the All Writs Act and agree with Judge Friedland that that was a substantive basis for the rule. That's a sufficient basis for this court to affirm. Well, okay, fair enough. I have a question on that too, but keep going. Second, we think the district court alternatively could have granted an injunction under Rule 65 had it addressed the likelihood of success and the merits here, which it didn't do. We acknowledge the merits of the claims brought in the complaint. And it could have done so under Pacific Radiation Oncology, precisely because the relief here is of the same character that could be granted finally, the language you just read. And that's because if at the end of the day, metering is found to be unlawful, it would be appropriate, indeed incumbent upon the district court to put the plaintiffs back in the position they would have been in, but for the government's conduct. And that position with respect to these class members would be you are treated as if you arrived and entered the United States prior to July 16th. That's what would have happened had you not been illegally metered. I'm going to put you in that position and say this rule can't be applied to you. And that principle that that relief is appropriate under Rule 65 comes from the Winston Research Corporation case, Your Honor, that we cite at page 48 of our brief. So I think there's one other, I think what the district court did here was she said, I do have authority to issue this kind of relief. I would have it under Pacific Radiation Oncology and I have it under the All Writs Act and went ahead and explained why it's an appropriate exercise for authority under the All Writs Act, because it would... Okay, let me ask you about the All Writs Act then, because I got to be honest, I'm nowhere near on board with the district court's interpretation of the All Writs Act. And quite frankly, Judge Berzon's opinion deals with it in a footnote, which I find pretty remarkable on such an important question. Can you cite me any case where there has been relief that might be available under Rule 65 to a plaint, to a party in a case where the All Writs Act has been used to give the district court authority for that injunction? Every single case I've looked at involves a third party that's not a party to the case. So Your Honor, two answers there. First, FTC versus Dean Foods. The Supreme Court says that the Court of Appeals can issue an injunction in joining a merger that the FTC was at the same time challenging administratively to get the exact relief it could have gotten in that merger. I'm not sure that directly answers your question, Your Honor, because I don't know that the Court of Appeals had a Rule 65 ability. Second, as Your Honor mentioned, the government has waived this argument. They don't address the All Writs Act at all. They certainly don't claim that the All Writs Act was somehow improper here because Rule 65 could have been... Do you think that it's... When we're dealing with the court's authority, should we apply the same rule to waiver over the court's authority as we do to the court's jurisdiction? No, Your Honor. I think that that is certainly waivable. This issue was briefed before the district court. It was briefed and argued in the stay motion and the government chose to not address it in their opening briefs inexplicably to me, but that's the choice they made. I think it's quite clear, as Judge Friedland said, that this was a substantive merits-based basis for the district court's injunction. One last point on Rule 65 and the All Writs Act, and that is they serve different purposes. I'm not sure that just because the district court could have gone to Rule 65 would negate its ability to rely on the All Writs Act. I totally disagree with you. That interpretation of the All Writs Act is pretty frightening because that suggests that the All Writs Act just gives the courts inherent authority to expand its jurisdiction or authority, however you want to say it, however it wants to. If we have Rule 65 that says, this is how a party gets relief, is under Rule 65, then that's what you're limited to. If you can't get it under Rule 65, then why would we as a court just say, well, we just want to reach the question and so we think that the All Writs Act provides that authority. I'll tell you why, Your Honor. I'll tell you what the limiting principle is. If you have a motion for a preliminary injunction that is, in fact, before a district court, challenging the very conduct that's complained of in the complaint, Rule 65 is clearly available to you, and there I would agree it would be improper to say, I'm just going to skip the likelihood of success in the merits and I'm going to issue the very same injunction under the All Writs Act. This is a rather unusual case where you have conduct that isn't challenged in the complaint, that was undertaken by the defendants and others in concert with them, that would serve to moot the claims before the court and eviscerate its jurisdiction. So at the same time, on one hand, you have the applicable rule, All Writs Act standards are met. At the same time, although you're not challenging the very conduct that's at issue in the complaint, you do have the ultimate relief available, and so you fall under sort of the broad, at the outside of Rule 65 is what Pacific Radiation Oncology says, right, look, I can go beyond the ordinary Rule 65 injunction out here if I could do it at the end of the case. And so you have a case with that diagram. My point is, and now we're going to just belabor it, so my point is, if you can't get relief under Rule 65, there's a reason you can't get relief under Rule 65. Because either, I mean, either there's a statutory basis or a rule basis why your clients can't get relief under Rule 65. And if they can't, then they shouldn't get relief because Rule 65 sets the outer limits. I don't view the All Writs Act, and I can't find a single case that suggests it, that well, we came close, but we couldn't quite get there, so we're just going to use the All Writs Act as this overall grant of authority to courts to reach decisions that are close, but we're not quite there. And I wasn't trying to suggest that, Your Honor. I think they provide the courts with just... Well, that's exactly how the district court applies it here. Well, they provide the courts with district sources of authority to serve different purposes, and this happens to be a case where the Venn diagram overlaps and both sources of authority apply. I see that I'm over my time, and I do want to eat into my colleagues. Yeah, well, we'll probably give her more, hopefully. Yeah, I would like to ask a question about the Rule 65 issue. So if we agree with you that Rule 65 could be a basis for the injunction here, can we just decide the case on that ground and not get to the All Writs Act? Absolutely, Your Honor, because the matter was fully briefed below. You have a complete record on this, and the precedents of this court say that you can decide on any basis that we may affirm a district court's judgment on any ground supported by the record, whether or not the decision of the district court relied on the same ground or reasoning we adopt. That's from Price v. City of Stockton. That case involved a preliminary injunction, and so that is an alternative basis that this court could affirm the injunction on. All right. Thank you very much, Mr. Leff, for your argument. Don't worry, you're not stealing any time from Ms. Kastler, because like I said at the beginning, you each get 10 minutes and you can't steal any of hers, because I knew this was going to happen. Thank you, Your Honor. Ms. Kastler, let me see if we can still... We can still see you, all right. Power's on. Okay. So you still get 10 minutes, so you may proceed. May it please the court. I'm Rebecca Kastler, appearing on behalf of the plaintiffs, and I'm here today to talk to you about why the district court's reading of the term arrives in was correct, both for purposes of its All Writs Act analysis and alternatively as a basis to issue an injunction under Rule 65 should the court choose to go there. And there are also two alternative statutory bases upon which this court could affirm under Rule 65, neither of which hinges on the arrives in analysis. And I'm also prepared to discuss why 1252F does not bar the preliminary injunction. Oh, the power's back on. I'm going to plug in my internet just a second. Sure, sure. Ms. Mary, if you could just stop the clock real quick. Great. All right, can you still hear and see me? We can. You may proceed or resume. So, I mean, I suppose we can start with 1252F. I'd like to address the question from the panel before about why didn't the motions panel go there? I think it's pretty obvious that the motions panel didn't think 1252F posed a barrier here. And it's notable that the government didn't raise it either. I mean, I suppose you could say that the panel just- Well, hold on. Didn't raise it? You mean didn't raise it to the motions panel or didn't raise it to us? Didn't raise it to the motions panel. Oh, I see. Oh, well, that would be an answer. If they did, I didn't realize that. That's a pretty simple answer. They didn't raise, the government didn't raise 1252F to the motions panel. Sure, but the court also didn't go there and it has an independent duty to ensure that it- Yeah, oh, okay. Fair enough. And the same could be said for the recent EBSC panel decision where the panel didn't sui sponte consider whether 1252F applied. And I submit to you that that's because it's quite obvious that it doesn't apply here. So, first, looking at the CARE coalition decision out of the district of DC, that's a very persuasive decision that is essentially answering the question before the court here. The court there enjoined the rule, vacated the rule, concluding that it does not, that injunction does not bar the operation of the INA at all. And furthermore, it noted that the rule here was promulgated pursuant to a statutory provision that's not even listed in 1252F. 1252F lists only part four of the INA, which is sections 1221 to 32. And the rule was promulgated pursuant to section 1158. So not listed in the plain language of 1252F. To the extent that the government relies on PDEA, which they submitted a 28-day letter on that point, this reliance is misplaced. So in PDEA, the court assumed that 1252F applied, which we don't get to that question at all because this injunction does not enjoin the operation of the specified statutes. But it's notable that the PDEA court concluded that under 1252F's exception clause, class-wide relief was permissible, and that decision is binding. So I'd like to move on to interpretation of the INA itself. So plaintiffs, the district court, and the- Did we lose her? Seems like. I think so. All right, Ms. Manning, if you could stop the clock again. Thank you. Yes, judges, she's dropped off the call. I will readmit her as soon as she shows up. Great, we'll just freeze things right now. All right, can you- Welcome back. I apologize, your honors. No, that's okay. I don't know. It's one of those days. That's all right, you're doing fine. You can proceed. Can I ask what you last heard? I don't know where I got cut off. You were starting to switch to the statutory interpretation. I don't think we've heard much past that. Yes. Okay, thank you, your honors. So plaintiffs, the district court, and the motions panel are all likely correct in their interpretation of sections 1225 and 1158, as well as the ban itself. The traditional canons of statutory construction all lead us to the same conclusion, which is that the plain meaning of the term arrives in, as well as arriving, which are used in 1158A1 and throughout 1225, those terms denote a process of arrival that encompasses those who would have arrived, but for the government's obstruction through metering. Therefore, CBP's mandatory duty to inspect all class members was triggered when they were metered. And if the panel doesn't have many questions about this issue, I can certainly refer you to the briefs, but the rule against surplusage, the use of the verb arrives, the tense used here. Did we lose her again? I think so. That looked like a power outage issue. Yeah. All right, everyone just stand by. Keep going. You're doing fine. Don't worry about it. It's happening. Don't worry about it. Keep going. You're great. No problems. Sure. Okay, so the rule against surplusage basically bars the government's reading of 1225 and 1158. Both statutes use the term present in a disjunctive list next to the term arrives in. So present or arrives in. And under the rule against surplusage, the category of present simply cannot subsume the category of arrives in, but that is the result of the government's reading. And I mentioned to you that present has a long history in the INA, and it means what it says, physically existing within the territorial boundaries of the United States. The term has long taken on that meaning for, I believe, over a century in immigration law. Beyond that, the verb arrive connotes movement. It's certainly one plain meaning of the verb arrives in to encompass individuals who are in the process of arriving just as our class members were. And Congress could have used the past tense here if it wanted to refer only to individuals who had already completed their arrivals. One brief point I would like to make about the government's reply brief on the meaning of otherwise seeking admission in 1225. The government, that's an explicit reference to certain lawful permanent residents who've committed crimes. That's absolutely incorrect. The Board of Immigration Appeals has held that such individuals are applicants for admission, and therefore they need not be included in the alternative catch-all category of otherwise seeking admission. And the BIA decision on that point is Enrique Collado Munoz, 21 INN 1061 from 1998. I would further point the court to the regulatory definition of arriving alien at 8 CFR section 1.2. While plaintiff's position is that the statutory language is unambiguous, this regulation certainly supports plaintiff's view. It defines arriving alien as one who is coming or attempting to come into the United States at a port of entry. This clearly describes class members here, and it maps directly onto plaintiff's definition of arrive, which includes those who would have arrived, but for the government's obstruction, similar to the concept of attempt use throughout our law. So because arrives in is likely a reference to individuals who are metered, among others, the court's interpretation of the term arrives in in the rule was likely correct. And also the fact that the government's duty to inspect was triggered at the time these people were metered means that there was likely also a violation of the mandatory duty to inspect, and therefore their metering was unlawful under the APA. And there are also two separate statutory bases why metering is likely unlawful. First, it's in direct conflict with the statutory scheme that Congress set out under which found citizens with or without entry documents would come to ports of entry, would be subjected to mandatory inspection, and those seeking asylum would have access to the process. Ports of entry have historically operated this way. Inspection always occurs after someone crosses the border. So Congress envisioned that individuals seeking asylum would be permitted to cross the border at ports. The mandatory nature of this inspection duty would be irrelevant if Congress, excuse me, if the agency could unilaterally circumvent the duty to inspect. Can I ask you, one of your arguments, I think, is that the rule doesn't apply to your clients at all because they tried to enter earlier and the rule's effective date means it only applies after. The government seems to be taking a different position than that by trying to apply the rule to your clients. Do we owe our deference to the government's position that it applies before and after? Well, the government hasn't raised any sort of argument that it's entitled to deference on the meaning of this rule. And I would note that the agency also promulgated this rule after the district court had already interpreted the term arrives in earlier in our litigation. So the government chose to use the same term in the same tense in essentially the same context and has decided that it takes on a different meaning without defining it explicitly. So, I mean, while the government doesn't ask the court to go through all the necessary analysis to conclude whether deference might be appropriate here, I would submit that even if there were some sort of deference at play, the meaning is clear. And all that aside, as Mr. Love stated, the likelihood that plaintiffs are going to succeed on the claim that metering is unlawful is itself an independent basis upon which the court could affirm, both because there's a conflict with the statutory scheme and metering exceeds the agency's authority, and separately because metering is based on a pretext,  And so, I would say that there's a likelihood that the APA 7062 can rest on our griefs on that point as I see my time is up. All right. Thank you very much, counsel. We'll now turn back to government counsel. We'll give you five minutes for rebuttal. And when you are ready, you may proceed. There we go. My admire, I was still muted, your honor. Thank you, your honor. Just a few quick points. First of all, I'd emphasize that on the face of the district court's order here, it's clear that this is a Rule 65 injunction. Again, the district court deals with the All Writs Act at pages 19 to 21 of its order under the jurisdiction heading. Then pages later, under the heading preliminary injunction, the court says the following. The court now turns to plaintiff's motion for preliminary injunction, and then it proceeds to evaluate the traditional injunctive factors. It's quite clear here that the actual merits basis, the actual basis for this injunction, putting aside the jurisdictional questions, is the Rule 65 factors. That's the kind of injunction this is. It's not a freestanding All Writs Act injunction. So there's no waiver. The government has explained a number of the problems with invoking the All Writs Act to justify the injunction here. I think Judge Nelson has highlighted a number of them. Among other things, I would also just add that this view of the All Writs Act allowing this kind of thing would pretty much eviscerate Pacific Radiation. It would say, hey, if the Pacific Radiation panel had thought to think of the All Writs Act, then you wouldn't need this kind of a connection between an injunction and what is pleaded in the complaint. Of course, Pacific Radiation forecloses that kind of a point. I would also emphasize, Your Honor, that I've mentioned this point before, but a big oddity of this injunction is that this is an injunction in a metering case of a transit rule without a ruling on the legality of metering and without a ruling on the legality of the transit rule and in a case where the transit rule isn't even. It's really an extraordinary injunction. But a point I want to emphasize, and we've gone through the statutory interpretation issues in our briefs at length, but the problems with the district court's motion to dismiss reasoning. But I'd emphasize the court doesn't even need to get to all of those points. The plain language of the rule covers this class here. The rule by its plain terms applies to these class members because they will, by definition, enter the United States after this rule took effect on July 16th, 2019. They're plainly covered by the rule. Whatever other basis could be said- Well, can I ask you about that? Because I don't really understand how someone who arrived, I mean, I think the class definition is that they arrived before the rule and then waited. So, I mean, if I have someone  and I say, hang on, I have to get something out of the oven, and I'll let you in in a second, and then I let them in, did they arrive when I am done taking the thing out of the oven? I mean, whether, I guess, I think it doesn't really matter whether they've arrived once or they've arrived twice, Your Honor. I think the consequence here of the rule is that it doesn't matter whether somebody arrived before. It's if they arrived in May of 2019 and they arrived in August of 2019, they're subject to the rule by its plain terms. But I just don't think it makes sense to say they arrived the second time. That's my point about this. The person standing at my door arrived once at my door. I let them in after I took the thing out of the oven, but that doesn't mean that they arrived a second time. I don't think. Your Honor, well, unless they went home to grab something to bring to the dinner party and came back, then they would arrive a second time, wouldn't they? And I do think that there is an oddity, Your Honor. I mean, I think Judge Friedland's question points up an oddity to this and a big problem with this process of arriving approach. It puts people in a situation of suspended animation where they've arrived but not really arrived. But that's the metering that does that. I don't think the people did that. I mean, the people didn't go back and come back again. They're waiting because the government told them to because of the metering, right? And when they show back up, Your Honor, they will arrive again. Well, even if they show back up, they're still there, I think, aren't they? They're just waiting. Your Honor, I think it's hard to say in a blanket way, but I think my understanding is that it's more customary for somebody to go live and say, you know, different towns nearby or that kind of thing. I don't think, you know, it's a thing where everybody's just literally waiting, you know, feet outside. But I don't think they didn't go home to Guatemala or something. They're waiting at the border. It may be a little bit away, but basically they're waiting until they get their turn, right? Because the government told them to wait. But they still have not arrived, Your Honor. This does get to the point of our point that territory of the United States borders, two have arrived. That's what the statute says. It says somebody physically present in, somebody who arrives in or is arriving in. It refers to that class of individuals as people who could be removed from the United States. If somebody had arrived just when they were in the process of arriving, then they'd be subject to this, the one-year bar on time limit on applying for asylum applications. I'm sure the plaintiffs wouldn't take the position that neither of those are bad. I know your time's up, but I just want to ask this one question, because arriving alien is defined in 8 CFR section 1.2 as an applicant for admission coming or attempting to come into the United States at a port of entry. So I understand the government's position now to be an arriving alien must be in the United States, but it seems to overstate the point a bit, because that provision seems to suggest that you could be attempting to come into the United States. So anyway, could you address that? Is that dispositive of your claim, or is it inapplicable? No, Your Honor. I mean, again, the statutes say what they say, and I would emphasize that, and this gets also, I think, I'll try to be brief here, Judge Owens, because I do know that I'm above my time, is that something that you end up seeing in these statutes is that even somebody who is internal, inside the United States, has still not always affect what is legally deemed an entry. So it's speaking to folks... But are you saying that your own regulation is invalid? I mean, is your answer to Judge Nelson that, yes, we're abandoning our own regulations definition? Is that what you're saying? No, Your Honor. I'm not saying that. So then what do you mean when you say the statutes say what they say? I mean, it seems like you're arguing the statute means one thing today, but the regulation says it means a different thing, right? No, it does not, Your Honor. It does not say that it covers somebody who is outside the United States. It is consistent with the presumption against extraterritoriality with the statute itself. It's referring to people who are internal, inside the borders of the United States. We are not disclaiming our regulation, our position, lines of the statute. And that's what you think it is about? It's someone already in? Your Honor, I think my understanding in this is that attempting often refers to folks who are in the United States, but under some form of official control, or they have not affected what legally qualifies as an entry, even if they are inside the United States. Somebody can be within, inside the territory of the United States without affecting an entry. So those points, I think, long running through immigration law, reaffirm our point. I do see I'm out over time. Thank you, Your Honor. I would ask the Court to vacate. I thank you both for your argument here. This matter is submitted, and this panel is adjourned. We're done. Sorry we couldn't be in the islands, but maybe another day. Take it away, Ms. Manning. Court for this session stands adjourned.
judges: Owens, Friedland, Nelson